FILED
CLERK, U.S. DISTRICT COURT

JUN 17 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                       DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6 \_\_\_\_
JS-2/JS-3 \_\_\_\_
Scan Only\_\_\_\_

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| BARBARA A. RUSSO, | No. CV 07-5488-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

### I.
### PROCEEDINGS

Plaintiff filed this action on August 22, 2007, seeking review of the Commissioner's denial of her application for Supplemental Security Income. The parties filed Consents to proceed before the undersigned Magistrate Judge on September 4, 2007, and September 5, 2007. Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 7, 2008, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/
/

## II.

## **BACKGROUND**

Plaintiff was born on July 2, 1963. [Administrative Record ("AR") at 73, 74, 76.] She has a tenth grade education [AR at 84], and past relevant work experience as a store manager and a cashier. [AR at 80-81, 86-87, 113-20.]

On July 19, 2004, plaintiff filed her application for Supplemental Security Income payments, alleging that she has been unable to work since January 19, 2004, due to chronic asthma, a heart condition, a hernia and diabetes. [AR at 12, 73, 74-75, 76-78, 79-85.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 34, 39-44, 51-52, 59-63.] A hearing was held on October 17, 2006, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 258-77.] A vocational expert also testified. [AR at 272-76.] On February 7, 2007, the ALJ determined that plaintiff was not disabled. [AR at 9-20.] When the Appeals Council denied plaintiff's request for review on June 29, 2007, the ALJ's decision became the final decision of the Commissioner. [AR at 4-7.]

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to

perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

### B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability. [AR at 14.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: asthma, obesity, history of supraventricular tachycardia, hypertension and diabetes. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1] to "perform sedentary work[2] with avoidance of heights and moving machinery and avoidance of concentrated exposure to fumes, odors, chemicals, gases and dust." [Id.] At step four, the ALJ concluded that plaintiff was not capable of performing her past relevant work. [AR at 19.] At step five, the ALJ found, based on the vocational expert's testimony, that there are a significant number of jobs in the national economy that plaintiff is capable of performing. [AR at 19-20.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 20.]

/

/

---

[1]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2]   Sedentary work is defined as work that involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to: (1) properly consider the relevant medical evidence of record; and (2) properly consider plaintiff's subjective complaints and assess plaintiff's credibility. Joint Stipulation ("Joint Stip.") at 3. As set forth below, the Court agrees with plaintiff in part, and remands the matter for further proceedings.

**MEDICAL EVIDENCE**

Plaintiff contends that the ALJ failed to properly consider the relevant medical evidence. Joint Stip. at 3-5. Plaintiff argues that the ALJ did not consider four hospital "admits," and that "the number of emergency treatments is more severe than as characterized by the ALJ in his unfavorable decision . . . ." Joint Stip. at 3. Plaintiff further argues that the ALJ failed to resolve an inherent inconsistency in the report of the internal medicine consultative examiner, Dr. Adi Klein, and alleges that the ALJ's statement that the x-rays of her right hand were negative was incorrect. Joint Stip. at 4.

In the decision, the ALJ concludes that plaintiff's asthma has generally been under adequate control, and that the exacerbations have not been as frequent as claimed by plaintiff. [AR at 18.] He also concludes that her treatment records show "only a few occasions" when she complained of palpitations. [AR at 18.] As support, the ALJ noted that plaintiff was seen in the emergency room for acute asthma exacerbation and supraventricular tachycardia ("SVT") on August 16, 2004, and for SVT on November 26, 2004. [AR at 16, 172-80, 181-86, 195-96.] The ALJ further noted that plaintiff had a physical examination at Molina Medical Centers, which showed wheezing and leg edema on September 1, 2004, and three follow up visits at Molina Medical Centers on December 3, 2004, January 7, 2005, and March 15, 2006. [AR at 16-18, 204, 206, 227.] X-rays of plaintiff's right hand ordered on March 15, 2006, were "negative with no postoperative changes involving the 4th metacarpal and no arthritis." [AR at 17, 227-28.] The ALJ also summarized Dr. Klein's opinion following an examination of plaintiff on November 29, 2006. [AR at 17, 248-52.] Specifically, the ALJ noted that "[t]he physical examination showed regular

heart rate and rhythm, diffuse wheezing in the lungs and no indication of any hernia." [AR at 17, 249-50.] The ALJ also indicated that Dr. Klein assessed plaintiff "as able to lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk 2 hours in an 8-hour workday, sit 6 hours in an 8-hour workday and restriction against exposure to dust, fumes, odors, chemicals and gases." [AR at 17, 251-52.]

Plaintiff alleges that four hospital "admits" were not considered by the ALJ, and that the number of emergency treatments was more severe than that found by the ALJ. Plaintiff cites to medical billing records to show that she was hospitalized. A close examination of the medical billing records suggests that plaintiff incurred monetary charges for emergency room visits at the Antelope Valley Hospital on August 5, 2005, November 9, 2005, February 7, 2006, and July 21, 2006, and was charged for a bed in the "semi-private telemetry" unit on July 22, 2006, as well as November 10 and 11, 2005. [AR at 232-35, 236-37, 238-42, 243-44.] While there are no medical opinions or any other evidence accompanying the medical billing records,[3] the billing records appear to indicate that plaintiff had emergency room visits and hospitalizations over and above those referenced by the ALJ.[4] Nonetheless, the ALJ completely ignores the billing records, and asserts that "there is no evidence of hospitalization." [AR at 19.] The ALJ's assertion is not accurate.

Although the plaintiff bears the burden of proving disability, the ALJ in a Social Security case has an independent "'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). This duty extends to the represented as well as to the unrepresented claimant. Id. The ALJ's responsibility derives in part

---

[3] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

[4] The billing records reflect an itemization of the charges for tests performed and treatment and services rendered during plaintiff's emergency department visits and/or hospitalizations in the "semi-private telemetry" unit.

from the basic premise that disability hearings are not adversarial in nature. See Sims v. Apfel, 530 U.S. 103, 110-11, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000). It is also based on the regulatory directive that, in an administrative hearing, the ALJ "looks fully into the issues." 20 C.F.R. §§ 404.944, 416.1444; see also Pearson v. Bowen, 866 F.2d 809, 812 (5th Cir. 1989) (recognizing ALJ's "duty of 'full inquiry' under 20 C.F.R. § 416.1444"). As part of this duty, the ALJ has an obligation to take reasonable steps to ensure that issues and questions raised by medical evidence are addressed so that the disability determination is fairly made on a sufficient record of information, both favorable and unfavorable to the claimant. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999).

      The presence of the medical billing records triggered the ALJ's duty to seek further development of the record. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoting Smolen, 80 F.3d at 1288). If evidence from the medical source is inadequate to determine if the claimant is disabled, an ALJ is required to recontact the medical source to determine if additional needed information is readily available. See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). As a general rule, the record will be considered "inadequate" or "ambiguous" when a medical source has provided a medical opinion that is not supported by the evidence. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("An ALJ is required to recontact a doctor if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination.") (citation omitted); Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001). Here, the ALJ did not consider the medical billing records or offer any explanation for disregarding those records. In fact, the ALJ's statement that "[t]here is no evidence of hospitalization" as a reason to discount

plaintiff's credibility is directly contradicted by these records, which show that plaintiff was indeed hospitalized. The ALJ erred by failing to properly consider the evidence of record, as ignoring these records led to an inaccurate summarization of plaintiff's hospitalization history. The ALJ should fully develop the record in this regard on remand.[5]

Moreover, plaintiff is correct that the ALJ in the decision did not resolve the inconsistency between Dr. Klein's written evaluation and his Medical Source Statement form. In the written evaluation, Dr. Klein found that plaintiff "could stand and walk for two hours and sit for six hours" in an eight-hour workday [AR at 252], but he checked the box on the Medical Source Statement form indicating that plaintiff could only stand and/or walk "less than 2 hours in an 8-hour workday." [AR at 254.] Accordingly, in light of the Court's finding that remand is warranted to fully develop the record, the ALJ is instructed to also resolve the inconsistency between Dr. Klein's findings with respect to plaintiff's ability to walk and/or stand in the Medical Source Statement form and the written evaluation. See 20 C.F.R. §§ 404.1519a(b)(4), 416.919a(b)(4) (where the medical evidence contains "[a] conflict, inconsistency, ambiguity, or insufficiency," the ALJ should resolve the inconsistency by recontacting the medical source).[6]

---

[5] In the decision, the ALJ also concluded that "neither the treatment nor consulting records show any objective abnormalities or functional impairment of the right hand." [AR at 18.] Plaintiff asserts in the Joint Stipulation that the x-ray report of her right hand "clearly reflects post operative changes 'involving the fourth metacarpal with 4 metallic screws fixing an old fracture in that area.'" Joint Stip. at 4. Plaintiff's assertion is inaccurate. The x-ray of plaintiff's right hand taken on March 16, 2006, showed that plaintiff had "[n]o postoperative changes involving the fourth metacarpal with four metallic screws fixing an old fracture in that area" and "[n]o lytic or blastic lesions or acute appearing fractures." [AR at 228.] The x-ray of the right hand also revealed "[n]o evidence of inflammatory arthritis." [AR at 228.] Plaintiff does not cite any evidence in the record that supports her contentions that the ALJ "has mischaracterized the x-ray report of Plaintiff's right hand" and "misstated critical medical evidence of record." Joint Stip. at 4. Nor does plaintiff cite any evidence that supports her allegation that she suffers from limitations in her right hand. In fact, the only evidence that plaintiff cites as support for her conclusion that her impairment involving her right hand affects her ability to engage in the occupations identified by the vocational expert is the March 16, 2006, x-ray report of her right hand, which is not at all supportive of plaintiff's conclusion. Thus, the ALJ properly considered the evidence of record regarding plaintiff's alleged right hand limitations.

[6] As the ALJ's consideration on remand of the medical evidence may impact the credibility issue raised by plaintiff in the Joint Stipulation, the Court will exercise its discretion not to address that issue in this Order. Rather, plaintiff's subjective complaints and impairments should

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly consider the medical evidence. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: June 17, 2008

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

be re-examined in light of the remand Order.